Karen Budd-Falen
BUDD-FALEN LAW OFFICES, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003-0346
(307) 632-5105 Telephone
(307) 637-3891 Facsimile
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FRIENDS OF THE PANAMINT VALLEY
5841 Round Mountain Road
Bakersfield, CA 93308;

LITTLE CHIEF MILLSITE PARTNERSHIP
1969 Christine Avenue
Simi Valley, CA 93063;

BRYAN LOLLICH, an individual,
6121 Bow River Drive
Colorado Springs, CO 80918;

        Plaintiffs,

      v.                          **PLAINTIFFS' COMPLAINT**

DIRK KEMPTHORNE, Secretary
United States Department of the Interior
1849 C Street, NW
Washington, DC 20240;

UNITED STATES
DEPARTMENT OF THE INTERIOR
1849 C Street, NW
Washington, DC 20240;

KATHLEEN CLARKE, Director,
Bureau of Land Management
1849 C Street, NW
Washington, DC 20240;

MIKE POOL, Director
California State Bureau of Land Management;
2800 Cottage Way, Suite W-1834
Sacramento, CA 95814-1886;

HECTOR VILLALOBOS, Field Manager
Bureau of Land Management
Ridgecrest Field Office
300 South Richmond Road
Ridgecrest, CA 93555;

THE BUREAU OF LAND MANAGEMENT,
1849 C Street, NW
Washington, DC 20240;

FRAN P. MAINELLA, Director,
National Park Service
1849 C Street, NW
Washington, DC 20240;

JAMES T. REYNOLDS, Superintendent
Death Valley National Park
P.O. Box 579
Death Valley, CA 92328; and,

THE NATIONAL PARK SERVICE,
1849 C Street, NW
Washington, DC 20240;

Defendants.

COME NOW, the Plaintiffs, by and through their undersigned attorneys, and state

their Complaint against the United States of America as follows:

**<u>NATURE OF ACTION</u>**

1.  Through the Federal Quiet Title Act, 28 U.S.C. §§ 1346(f) and 2409a, this action

seeks to quiet title through declaratory relief by requiring Defendants, United States

of America, Department of the Interior, Bureau of Land Management ("BLM") and

National Park Service ("NPS") to open a recognized public right-of-way, as required

by Revised Statute 2477 (formerly codified at 43 U.S.C. § 932), over a road that traverses Federal public land, owned and managed by the BLM and NPS, in order to ensure access at all times and in order to maintain the road without BLM or NPS approval or notification.

2.     Specifically, Plaintiffs Friends of the Panamint Valley and Little Chief Millsite Partnership challenge the BLM and NPS's violations of, and failure to comply with, Revised Statute 2477. Revised Statute 2477 provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." The Act of July 26, 1866, § 8, ch. 262, 14 STAT. 251, 253 (1866) (formerly codified at 43 U.S.C. § 932). Congress enacted a grant of rights-of-way over unreserved public lands for the construction of highways. The grant was originally section 8 of the Mining Act of 1866, which became section 2477 of the Revised Statutes, hence the grant is commonly referred to as R.S. 2477.

3.     The grant is self-executing and an R.S. 2477 right-of-way comes into existence "automatically" when the requisite elements are met. See Shultz v. Department of Army, 10 F.3d 649, 655 (9th Cir. 1993).

4.     One hundred and ten years after its enactment, R.S. 2477 was repealed with the passage of the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1701 et. seq. See 43 U.S.C. § 932, repealed by Pub. L. No. 94-579, § 706(a), 90 STAT. 2743, 2793 (1976). Even though FLPMA repealed R.S. 2477, FLPMA explicitly preserved any rights-of-way that existed before October 21, 1976, the date of FLPMA's enactment. See 43 U.S.C. § 1769(a) (stating that nothing "in this subchapter shall have the effect of terminating any right-of-way or right-of-use

heretofore issued, granted, or permitted."); see also 43 U.S.C. § 1701, Savings Provision (a) and (h). Therefore, R.S. 2477 rights-of-way which were perfected prior to 1976 are valid even after the repeal of R.S. 2477. The repeal of R.S. 2477 "froze" the scope of the R.S. 2477 right-of-way. Thus, the scope of the R.S. 2477 right-of-way is limited by the established usage of the route as of the date of repeal of the statute. Southern Utah Wilderness Appliance v. Bureau of Land Management, 425 F.3d 735, 746 (10th Cir. 2006) (hereafter referred to as "SUWA v. BLM").

5.  The Federal public lands, and the road at issue herein, all lie within Inyo County, California.

6.  Plaintiff Little Chief Mill Site Partnership and individual members of Plaintiff Friends of the Panamint Valley own private property in Inyo County, California. This private property is completely surrounded by Federal public lands owned and managed by the BLM and the NPS. The partnerships' principal access to their property is across the road at issue herein. This road is included on Inyo County Road Maintenance Records.

7.  In or around 2001, the BLM closed the entrance to Surprise Canyon Road after a settlement to resolve litigation instigated by the Center for Biological Diversity. This closure has prevented the Friends of the Panamint Valley and the Little Chief Mill Site Partnership from accessing their private property. The BLM and NPS refuse to recognize the existence of a right-of-way across the road at issue herein pursuant to R.S. 2477.

8.  Accordingly, by closing a county road, the BLM and NPS are violating the Congressional mandate contained within Revised Statute 2477 by interfering with

a right-of-way over public lands, and judicial relief is necessary and appropriate in order to recognize that such a right-of-way exists, to ensure access at all times over the road at issue herein, and to perform occasional routine maintenance of said road without BLM or NPS approval or notification as is allowed by Department of Interior policy.

9.   In the alternative, Plaintiff Bryan Lollich brings this civil action for declaratory and injunctive relief pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).  Plaintiff seeks to compel the BLM and NPS to perform the nondiscretionary ministerial action of processing the Plaintiff's application for a right-of-way, and to order the BLM and the NPS to immediately grant the Plaintiff's applications to access his private property in accordance with the California Desert Protection Act of 1994 ("CDPA"), Pub. L. 103-433, § 708, Oct. 31, 1994, 108 STAT. 4471, and the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3210(b).

## JURISDICTION AND VENUE

10.   Plaintiffs bring this civil action to request this Court to quiet title to a recognized, existing county road that traverses Federal public land owned and managed by the BLM and the NPS.  The nature of the right, or interest, which the Plaintiff claims in the real property at issue was acquired pursuant to Revised Statute 2477.

11.   The Defendants have taken adverse action against such property by closing a public road.  An "agency may not use its authority, either by delay or by unreasonable disapproval, to impair the rights of the holder of the R.S. 2477 right of way." SUWA v. BLM, 425 F.3d 735, 748 (10th Cir. 2006).

12.    In the alternative, Plaintiff Lollich brings this civil action pursuant to 5 U.S.C. § 706(1) for declaratory and injunctive relief to compel the BLM and NPS to process Plaintiff's applications for a right-of-way that traverses Federal public land that is owned and managed by the BLM and the NPS.  This application should immediately be granted pursuant to the California Desert Protection Act and the Alaska National Interest Lands Conservation Act.  <u>See</u> CDPA, Pub. L. 103-433, § 708, Oct. 31, 1994, 108 STAT. 4471, and ANILCA, 16 U.S.C. § 3210(b).

13.    Defendants have consented to a waiver of sovereign immunity in civil actions to adjudicate disputes regarding real property in which the United States claims an interest.  <u>See</u> 28 U.S.C. §§ 1346(f) and 2409a.

14.    Defendants have also consented to a waiver of sovereign immunity in civil actions to adjudicate disputes involving a person suffering a legal wrong, or adversely affected or aggrieved by agency action.  <u>See</u> 5 U.S.C. § 702.

15.    Plaintiffs Friends of the Panamint Valley and Little Chief Millsite Partnership also bring this civil action for a writ of mandamus pursuant to 28 U.S.C. § 1361 in order to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Plaintiffs seek to compel the BLM and NPS to provide the Plaintiffs a recognized right-of-way, as required by Revised Statute 2477, in order to ensure access at all times over a road that traverses Federal public land owned and managed by the BLM and NPS and in order to maintain said road without BLM or NPS approval or notification.  This includes, but is not limited to, the removal of any barriers which currently prohibit access to the right-of-way in question.

16.     Plaintiff Lollich brings an additional civil action for a writ of mandamus pursuant to 28 U.S.C. § 1361 in order to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Plaintiff seeks to compel the BLM and NPS to process the Plaintiff's right-of-way applications with expediency and to grant such application in order to ensure adequate access to their private property that lies within the boundaries of the Federally owned and managed land. The BLM and NPS should be compelled to grant this application to ensure that the Plaintiff is able to reasonably enjoy access to his property.

17.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, including Revised Statute 2477, the Declaratory Judgment Act (28 U.S.C. § 2201), the Quiet Title Act (28 U.S.C. §§ 1346(f) and 2409a), and the Equal Access to Justice Act (28 U.S.C. § 2412). An actual, justiciable controversy now exists between Plaintiffs and Defendants; therefore, this Court may declare the rights and other legal relations of the parties in this action under 28 U.S.C. §§ 2201 and 2202.

18.     Since this action is against the United States and is founded upon an Act of Congress, jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1346(a)(2).

19.     Venue is proper in the United States District Court for the District of Columbia in that the principal offices of the Defendant federal agencies are located in the District of Columbia.

20.     This case is ripe for judicial review because the Defendants' employees, officers, and agents have unlawfully interfered with, and will continue to interfere with and deny

use of a public road in violation of Revised Statute 2477.  The Defendants have also unlawfully interfered with, and will continue to unlawfully interfere with, Plaintiffs' right, as members of the public, to use and maintain their right-of-way granted pursuant to Revised Statute 2477.

21.    Plaintiffs are bringing this claim within the appropriate statute of limitations period for each cause of action.  The statute of limitations for claims under the Federal Quiet Title Act is twelve years.  See 28 U.S.C. § 2409a(g).  This statute of limitations began to run upon the closure of the Surprise Canyon Road, in May 2001.

22.    The statute of limitations for claims under the Administrative Procedures Act is six years.  See James Madison Ltd. By Hecht v. Ludwig, 82 F.3d 1085, 1094 (D.C. Cir. 1994); Impro Products, Inc. v. Block, 722 F.2d 845, 850 (D.C. Cir. 1983).  The earliest date that this statute of limitations began to run is December 2003, when Plaintiff Lollich applied to the BLM and NPS for right-of-way access to his private property.

23.    Plaintiff Lollich has attempted to exhaust any and all administrative remedies through the Department of the Interior's Office of Hearings and Appeals.  However, the BLM and NPS have refused to issue an appealable decision or to process Plaintiff's applications, and thus the Plaintiff's only recourse is the court system.

24.    Plaintiff Lollich is properly in this Court in accordance with the provisions of 5 U.S.C. § 706(1), which allows a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."  In this action, Plaintiff Lollich asserts that the BLM and NPS failed to take a discrete agency action that they were required to take

when the agencies failed to grant Plaintiff's right-of-way applications, a ministerial act.

## PARTIES

25.   Plaintiff Friends of the Panamint Valley is a group comprised of individual owners of property located near Panamint City, California.  Panamint City is an abandoned mining town which is surrounded by Death Valley National Park.  The only means of accessing this property is a road known as Surprise Canyon Road, which is surrounded by BLM and NPS lands, and which has been closed by the BLM.  Use of their private property near Panamint City, California is germane to the purpose of this association.  The individual members of Friends of the Panamint Valley include Bryan and Kristin Lollich, Bonnie Fergeson, Dale and Heidi Walton, Dawnett and Robert Brewster, Donna and Hilary Kunz III, Douglas and Elizabeth Hawley, Eric and Brandi Pyle, Frederick and Kimberly Williams, Freddy and Lori Jauch, Gary and Dana Ashbee, Jack and Karen Branch, Jack and Marcia Skaggs, Jeremy and Tami Rowell, Jess and Virginia Deegan, James and Jayne Rogers, Joe Mahaffey, W. Joe and Jan Stocker, Jon and Marge Aichele, Kenneth and Judy Lollich, Luke and Jerri Curtis, Mariln and Christine Czajkowski, Randy Billings, Richard and Kathy Gauthier, Rodney and Lynn Brown, Ronald and Cynthia Sharp, Richard Kemp, Jr., Russell and Kay Warshaw, and James and Cheryl Stayton.

26.   Plaintiff Little Chief Millsite Partnership is a general partnership under the laws of California which owns private property near Panamint City, California.  This property is surrounded by Death Valley National Park, and partners currently have no access to this private property.  This lack of access is a result of actions taken by

the BLM in closing Surprise Canyon Road. Use of its private property near Panamint City, California is germane to the purpose of this partnership. Partners of the Little Chief Millsite Partnership include: Kris A. and Christina M. Tholke, Richard F. and Sharon Wohlers, Garry and Susan Hall, Grant Barclay, Eric and Deonna Bernocco, Daniel and Wendy Retz, Jeffrey and Carol Ann Sanders, Robert and Joyce Frank, Millard C. and Christy Lynn Thornton, Paul and Leilani Sinclair, Andrew Dempsey and Lisa May Couch, Robert E. Taylor, James C. and Mary C. Smith, William R. and Lynne M. Maddux, Eric and Rose Anderson, Patrick and Deanna Curl, Robert L. and Donna R. Park, Ryan C. Johnson, Erik J. and Lisa R. Linker, Michael S. Hendricks, Verlin T. and Patricia A. Steele, Jerry W. Sparks, David G. and Kathy Worley, Keith D. and Teresa K. Lyon, John M. and Doris M. Ball, Christopher A. and Mary Witham, Anthony D. and Jackie A. Fiori, Robert J. Yates, Jay S. Weedon, Gerald W. Sparling, Kristen and Richard Carter, Curt R. and Lisa R. Blau, Tom G. and Lisa M. Lowery, Mark R. and Kimberly Hinkley, John R. and Michelle James, Brett Aurthor Thornton, Kendra M. Yates, Samantha A. Retz, Lindsey Ann Sanders, and Hunter Scott Hinkley.

27.  Plaintiff Bryan Lollich is an owner of private property near Panamint City, California. Panamint City is an abandoned mining town which is surrounded by Death Valley National Park. Lollich is just one of many private property owners who currently do not have access to their property because the BLM and NPS have denied them access to the only road that leads to that property.

28.  Defendant Dirk Kempthorne is the Secretary of the Department of the Interior ("Secretary of the Interior"). As Secretary of the Interior, he is responsible for the

direction and supervision of all operations and activities in the Department of the Interior, including those taken by the BLM and NPS. In that capacity, he, his agents, and his employees are charged with implementing the requirements of Revised Statute 2477 on the Federal public lands within the State of California. His office is located in Washington, D.C.

29.    Defendant Department of the Interior ("DOI") is an executive department of the United States government, and has jurisdiction over the BLM and NPS. Its principal office is located in Washington, D.C.

30.    Defendant Kathleen Clarke is sued in her official capacity as the Director of the BLM. Director Clarke is responsible for the direction and supervision of all operations and activities within the BLM. In that capacity, she and her employees, officers, agents, and assigns are charged with following and implementing the federal laws and regulations governing the management and use of the public lands. Her office is located in Washington, D.C.

31.    Defendant Mike Pool is sued in his official capacity as the California State BLM Director. California State Director Pool is responsible for the direction and supervision of all operations and activities on BLM lands in the State of California. In that capacity, he and his employees, officers, agents, and assigns are charged with following and implementing the federal laws and regulations governing the use and management of BLM lands within the State of California.

32.    Defendant Hector Villalobos is sued in his official capacity as the Field Manager for the Ridgecrest, California field office for the BLM. Field Manager Villalobos is responsible for the direction and supervision of all operations and activities in the

Ridgecrest Field Office. In that capacity, he and his employees, officers, agents, and assigns are charged with following and implementing the federal laws and regulations governing the use and management of BLM lands within the Ridgecrest District.

33. Defendant BLM is an agency of the DOI charged with management of the Federal public lands at issue herein in accordance and compliance with Federal law. Its principal office is located in Washington, D.C.

34. Defendant Fran P. Mainella is sued in her official capacity as the Director of the NPS. Director Mainella is responsible for the direction and supervision of all operations and activities within the NPS. In that capacity, she and her employees, officers, agents, and assigns are charged with following and implementing the federal laws and regulations governing the management and use of the public lands. Her office is located in Washington, D.C.

35. Defendant James T. Reynolds is sued in his official capacity as the Superintendent of Death Valley National Park. Superintendent Reynolds is responsible for the direction and supervision of all operations and activities in the Death Valley National Park. In that capacity, he and his employees, officers, agents, and assigns are charged with following and implementing the federal laws and regulations governing the use and management of NPS lands within the Death Valley National Park.

36. Defendant NPS is an agency of the DOI charged with management of the Federal public lands at issue herein in accordance and compliance with Federal law. Its principal office is located in Washington, D.C.

## FACTUAL ALLEGATIONS

37.    Plaintiffs Little Chief Millsite Partnership, Bryan Lollich, and other individual members of the Friends of the Panamint Valley own private property near Panamint City, Inyo County, California.  Plaintiffs' private property is completely surrounded by Federal public lands owned and managed by the BLM and the NPS.

38.    Plaintiffs' sole access to their private property is across the road at issue herein, which is designated as Inyo County Road #5033.  Throughout its history, the road has been referred to as "Panamint Road," "Panamint City Road," and "Surprise Canyon Road" (hereafter referred to as "Surprise Canyon Road").  The road commences at a point along Indian Ranch Road and runs in a northeasterly direction towards Plaintiffs' private property and Panamint City.

39.    The road terminates at Panamint City, near Plaintiffs' private property.  The road is approximately six miles in length.  The entire road traverses Federal public lands, with the exception of those portions of the road which were not included in the dedication of the Death Valley National Monument and later the Death Valley National Park.

40.    The only road into Panamint City, Surprise Canyon Road, was originally established in the 1870s, when Panamint City had a brief mining boom when copper-silver ore was discovered.  At that time, the road was in a condition sufficient to allow stagecoaches, horse-drawn buggies, and freight wagons to travel to and from Panamint City.

41.     The mines in Panamint City closed in 1877.  Since that time, prospectors have made several attempts to use modern mining methods to produce ore from the mines, always accessing the mining site by using the road through Surprise Canyon.

42.     Surprise Canyon Road was reconstructed in 1918, 1924, and was improved in 1947-48.  These reconstructions and improvements were necessary due to storms washing out the road, and included using a D-8 Caterpillar to grade the road, as well as blasting of the road.

43.     Panamint City became a minor tourist attraction after its mining heyday.  Tourists drove up the Surprise Canyon Road throughout the 1940s, 1950s, 1960s, and 1970s.

44.     Flash-flooding washed out Surprise Canyon Road in 1984.  However, private land owners continued to use the road to access their private property.  In addition, many tourists continued to make their way up the road using four-wheel drive vehicles until its closure by the BLM in May 2001.

45.     The Surprise Canyon Road has been recognized as a right-of-way many times throughout its history.  It was acknowledged on a U.S. Geological Survey ("USGA") Map as early as 1906, when the USGA published the Ballarat quadrangle.

46.     As early as July 6, 1874, the road currently known as Surprise Canyon Road appears on the Inyo County Road Register.

47.     According to the Inyo County Road Register, Inyo County licensed a toll road franchise to collect toll fees for the use of Surprise Canyon Road.  Rates were fixed for the use of this toll road on August 19, 1874.

48.     The Surprise Canyon Road is mentioned several times on the historical Inyo County, California maintenance records, further indicating that it is a county road.

Additionally, the Inyo County Planning Department stated in an agenda request form for a February 8, 2005 Board of Supervisors meeting that the Surprise Canyon Road was included in the County Maintained Road System.

49. Whereas Surprise Canyon Road was created in the 1870s, Death Valley National Monument was not created until February 11, 1933, under President Herbert Hoover's Executive Proclamation 2028. Panamint City and the Surprise Canyon Road were not included within the boundaries of the Monument.

50. The boundaries of Death Valley National Monument were extended in 1937 by President Franklin Roosevelt in Executive Proclamation 2228 and again in 1952 by President Harry Truman in Executive Proclamation 2961. These extended boundaries still did not encompass Panamint City or the Surprise Canyon Road.

51. At the time that Death Valley National Monument was originally created, property at Panamint City had been under private ownership for over 50 years. Part of the property in question, the Independence mill site, was patented on January 15, 1880. The other part of the property in question, the Little Chief mill site, was patented on April 12, 1876. The patents issued to the Little Chief Partnership and Mr. Lollich's predecessors-in-interest provides: "to have and to hold, said mining premises, together with all the rights, privileges, immunities and appurtenances of whatsoever nature thereunto belonging unto the said [grantee] and to their heirs and assigns forever. . ." The patent to the Little Chief and Independence Millsites expressly grants the land "with all the immunities and appurtenances . . . belonging to the [grantee]."

52.     The property was privately owned by various people until it was sold by Sheriff's Deed to Dallas and Richard Corum in October 1987. The Corums quitclaimed the property to Garrison and Sarah Norvell in December 1988.

53.     Individual members of Plaintiff Friends of the Panamint Valley, including Plaintiff Bryan Lollich, bought their property at Panamint City from Garrison and Sarah Norvell.

54.     On or about March 16, 2000, the Center for Biological Diversity, the Sierra Club, and the Public Employees for Environmental Responsibility (collectively "the Center") sued the BLM for violation of Section 7 of the ESA, alleging that the BLM failed to enter into formal consultation with the Fish and Wildlife Service ("FWS") on the effects of the California Desert Conservation Plan regarding threatened and endangered species.

55.     On August 25, 2000, the BLM entered into a court-approved stipulation acknowledging, without admitting, that the activities authorized, permitted, or allowed under the California Desert Conservation Plan might adversely affect threatened or endangered species. The BLM further acknowledged that ESA Section 7(a)(2) requires that the BLM consult with the FWS to ensure that its adoption and implementation of the California Desert Protection Act is not likely to jeopardize the continued existence of threatened or endangered species, or to result in the destruction or adverse modification of the critical habitat of any species.

56.     The stipulation between the BLM and the Center included a provision which prohibited motorized access to Surprise Canyon, although it included a sentence which excluded private property owners from its terms. This sentence stated,

"Individuals owning private property in the vicinity of Panamint City shall not be subject to the restrictions of this paragraph." The stipulation agreement also required the BLM to complete a NEPA document.

57.    On May 23, 2001, the BLM released an Environmental Assessment ("EA") for the Proposed Interim Closure of Surprise Canyon Road to Motorized Vehicle Use. This EA acknowledged that the Surprise Canyon Road provides the only access to Panamint City.

58.    The EA acknowledges that the CDPA identified Surprise Canyon Road as a "cherry stem" route through the Surprise Canyon Wilderness to Panamint City when it created the Surprise Canyon Wilderness in October 1994.

59.    The EA proposed temporarily closing Surprise Canyon Road to all motorized vehicle use. However, this proposed action also stated that "[e]xemptions to the interim closure to motorized vehicles would be granted to law enforcement and other emergency vehicles in the course of official duties, and ***also to the owners of private property located in the vicinity of Panamint City for purposes of accessing their property.***" (Emphasis added).

60.    The EA stated that if the proposed action was taken, "private land owners would be issued a written authorization from the Ridgecrest Field Office Manager, a serialized key to the lock on the gates."

61.    The BLM installed a gate prohibiting access to Surprise Canyon Road shortly after May 29, 2001.

62.    After the closure of Surprise Canyon Road, Plaintiff Lollich requested a key for the gate closing the road from BLM Ridgecrest Field Office Manager, Hector Villalobos.

He made this request so that he could access his private property, which is accessible only by Surprise Canyon Road.

63.    In response to Plaintiff's request for access, Mr. Villalobos and other BLM employees made various requests of the Plaintiff, including a map of his property, proof of ownership, a list of activities which Plaintiff would engage in on his property, a schedule of dates when Plaintiff intended to access the property, the number of people that would access the property, the number of visits to and from the property, the number and type of vehicles that Plaintiff would use to access his property, specific activities that would require motorized access to the property, and measures that Plaintiff would take to protect the environment while accessing the property.

64.    In response to the Plaintiff's request for access, Villalobos stated that "accessing private property within Death Valley National Park requires authorization from the Superintendent.  This would be in addition to authorization to operate a motorized vehicle in the portion of Surprise Canyon managed by the Bureau of Land Management."

65.    Villalobos later told the Plaintiff that he would "need to choose between filing an application for a permit or a right-of-way," because although the stipulation between the BLM and the Center authorized access to private property, it did not exempt the BLM or the NPS from complying with applicable laws.  On information and belief, this is the first time in the 120 year history of the Surprise Canyon Road that an agency required a permit or right-of-way application for use of the road.

66.    Plaintiff Lollich applied to the BLM and NPS for the grant of a right-of-way in December 2003.

67.    The BLM and NPS have refused to act on the Plaintiff's applications, neither granting nor denying their request for access.

68.    As a result of the BLM and NPS's failure to take action on the Plaintiff's applications, the Plaintiff has been unable to access his property by vehicle since the BLM closed the Surprise Canyon Road.

69.    If the BLM or NPS pursue a formal notice of trespass against Lollich, he could be liable for the costs of the investigation, the rental value of the lands, the rehabilitation of the lands, fines or other penalties, or the BLM and NPS may pursue criminal action, including potential imprisonment. See 43 C.F.R. §§ 2801.3(b-c), (g).

70.    If a recognized right-of-way exists, pursuant to R.S. 2477, the BLM and NPS have no jurisdiction over the Surprise Canyon Road. At the same time, the BLM and NPS may not preclude or unreasonably interfere with the reasonable exercise of the scope of rights, as those rights existed on October 21, 1976, of those who hold valid rights-of-way within the boundaries of Federal land.

71.    Furthermore, Plaintiffs Friends of the Panamint Valley and Little Chief Millsite Partnership bring this action in order to enjoy unfettered use and routine maintenance of the road without fear of administrative, civil, or criminal liability for any alleged unauthorized activity or trespass.

72.    The BLM and NPS refuse to recognize the existence of a right-of-way across the public land pursuant to R.S. 2477 and insists that the Plaintiffs pursue a right-of-way easement through the provisions of FLPMA, Subchapter V, codified at 43 U.S.C. §§ 1761-1771.

73.    Rights-of-way across Federal public lands established pursuant to FLPMA, Subchapter V, shall be subject to such terms and conditions as the Secretary of the Interior may prescribe regarding the "extent, duration, survey, location, construction, maintenance, transfer or assignment, and termination" of the particular right-of-way at issue.  See 43 U.S.C. §§ 1764( c).

74.    Furthermore, rights-of-way established pursuant to FLPMA are subject to annual rental payments for their use and occupancy.  See 43 U.S.C. § 1764(g).  Such rights-of-way are further subject to terms and conditions regarding scenic values, aesthetic values, fish and wildlife habitat, or otherwise to protect the environment, federal property, or economic interests.  See 43 U.S.C. § 1765.

75.    However, since this is a right-of-way easement established pursuant to R.S. 2477, there are no annual rental payments required and the Plaintiffs Friends of the Panamint Valley and the Little Chief Millsite Partnership, as members of the public, would otherwise be subject only to reasonable regulations that would not interfere with their historical use and enjoyment of Surprise Canyon Road, as that use existed on October 21, 1976, the date FLPMA was signed into law.

76.    However, *assuming arguendo* that an ANILCA/CDPA permit is necessary for Plaintiff Lollich to access Surprise Canyon Road, the BLM and NPS have refused to take action on the Plaintiff's right-of-way applications.

77.    The BLM and NPS have refused to issue a written decision denying the right-of-way applications.

## STATUTORY BACKGROUND

### *RIGHT-OF-WAY GRANTS UNDER R.S. 2477*

78.  Revised Statute 2477 provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." The Act of July 26, 1866, ch. 262, § 8, 14 STAT. 251, 253 (1866) (formerly codified at 43 U.S.C. § 932). Congress enacted a grant of rights-of-way over unreserved public lands for the construction of highways. The grant was originally section 8 of the Mining Act of 1866, which became section 2477 of the Revised Statutes.

79.  The grant is self-executing and an R.S. 2477 right-of-way comes into existence "automatically" when the requisite elements are met. See Shultz v. Department of the Army, 10 F.3d 649, 655 (9th Cir. 1993).

80.  One hundred and ten years after its enactment, R.S. 2477 was repealed with the passage of the Federal Land Policy and Management Act ("FLPMA") of 1976, 43 U.S.C. § 1701 *et. seq.* See 43 U.S.C. § 932, repealed by Pub. L. 94-579, § 706(a), 90 STAT. 2743, 2793 (1976). Even though FLPMA repealed R.S. 2477, FLPMA explicitly preserved any rights-of-way that existed before October 21, 1976, the date of FLPMA's passage. See 43 U.S.C. § 1769(a) (stating that nothing "in this subchapter shall have the effect of terminating any right-of-way or right-of-use heretofore issued, granted, or permitted."); see also 43 U.S.C. § 1701, Savings Provisions (a) and (h). The repeal of R.S. 2477 "froze" the scope of the R.S. 2477 right-of-way. Thus, the scope of an R.S. 2477 right-of-way is limited to the established usage of the road as of the date of repeal of the statute. SUWA v. BLM, 425 F.3d 735, 746 (10th Cir. 2006).

81.  Therefore, R.S. 2477 rights-of-way which were perfected prior to 1976 are valid even after the repeal of R.S. 2477.

82.  Public highways established under R.S. 2477 became right-of-way easements across public lands that can only be terminated by abandonment or an affirmative act by the authorized state or county vacating the road.

83.  Whether a public highway was established is determined by the requirements of state law.  Here the law of the State of California governs the establishment of a public highway.

84.  In California, where the Surprise Canyon Road is located, "no particular formality of either word or act is required" to constitute a dedication of a road.  See Western Aggregates v. Yuba, 101 Cal. App. 4th 278, 297 (Cal. Ct. App. 2002), citing Smith v. City of San Luis Obispo, 30 P. 591 (Cal. 1892).  "Use of the street by the public for a reasonable length of time, where the intention of the owner to dedicate is clearly shown, is sufficient, without any specific action by the municipal authorities, either by resolution or by repairs or improvements."  Id.

85.  Although formal adoption of the road by a county is not necessary to establish a public road in California, any action by the county that would be consistent with the acceptance of the road as a county road tends to prove that the road is a public road:

> Any action of the responsible public officials showing an assumption of control over the road was sufficient recognition that the road was a public highway.  Evidence that [a] superintendent of roads sent road equipment to that portion of the road with instructions to make repairs on it supported the inference of implied acceptance by the county.

Id. citing Re-Open Rambla, Inc. v. Board of Supervisors, 39 Cal. App. 4th 1499, 1506-07 (Cal. Ct. App. 1995).  However, mechanical construction is not a necessary

condition for finding a valid R.S. 2477 right-of-way, but rather it is evidence of the existence and scope of the public use that defined that right-of-way. See SUWA v. BLM, 425 F.3d 735, 779 (10th Cir. 2006).

86.    Furthermore, markings on official maps can provide evidence that a public road exists. CAL. EVID. CODE § 1341; Gray v. Magee, 133 Cal. App. 653, 658, 661; 24 P.2d 948 (1933).

87.    Importantly, under California law, a public highway is established when a toll road is created. See Wood v. The Truckee Turnpike Co., 24 Cal. 474, 476-77 (Cal. 1864). In Wood v. The Truckee Turnpike Co., the Supreme Court of California stated that:

> A turnpike is a public highway, established by public authority for public uses, and is to be regarded as a public easement, and not as private property. The only difference between this and a common highway is, that instead of being made at the public expense in the first instance, it is authorized and laid out by the public authority, and is made at the expense of individuals in the first instance; and the cost of construction and maintenance is reimbursed by a toll levied by public authority for this purpose. Every traveler has the same right to use it, paying the toll established by law, as he would have to use any other public highway.

See Wood v. The Truckee Turnpike Co., 24 Cal. at 489-90. The Supreme Court of California later clarified this point even further. See People v. Davidson, 79 Cal. 166, 169-70, 21 P. 538 (Cal. 1889). In People v. Davidson, the Court stated that a person who creates a toll road - even if that toll road is over private land - dedicates it as a public highway when it accepts tolls from the public for its use. See id. Further, the public use of "the road for the purpose of travel" was sufficient for public acceptance of the dedication as a public highway. See id.

88.    Finally, the scope of the right-of-way finds limitations in the light of the uses to which the road was put at the time that FLPMA repealed R.S. 2477 on October 21,

1976.  The "scope" of a right-of-way refers to the bundle of property rights possessed by the holder of the right-of-way.  This bundle is defined by the physical boundaries of the right-of-way as well as the uses to which it has been put.  The scope of the right-of-way is correctly measured according to California state law.  In California, the right-of-way for such a road include those rights "which will promote the public comfort and convenience in the use of the highway."  Gurnsey v. Northern Cal. Power Co., 160 Cal. 699, 702, 117 P. 906 (Cal. 1911).

*THE CALIFORNIA DESERT PROTECTION ACT*

89.   Congress created the California Desert Protection Act ("CDPA") in 1994 to designate certain lands in the California Desert as wilderness, to establish the Death Valley and Joshua Tree National Parks, to establish the Mojave National Preserve, and for other purposes.  See CDPA, Pub. L. 103-433, § 708, Oct. 31, 1994, 108 STAT. 4471.

90.   Under the CDPA, both Panamint City and the Surprise Canyon Road were specifically excluded from inclusion within the Death Valley National Park.  See CDPA, Pub. L. 103-433, § 308.

91.   In May 1994, Senator Diane Feinstein explained to Congress that Surprise Canyon Road was excluded to facilitate mineral development and said that the area was not to be managed as a wilderness area.  See 140 Cong. Rec. S5315-03.  Additionally, in her explanation to Congress, Senator Feinstein, author of the CDPA of 1994, stated that she agreed with the Committee's markup of the bill, which reduced the area of the Surprise Canyon Wilderness.  The committee's report to Congress specifically states that "the committee has modified the boundary to exclude certain mineralized

areas yet retain the wilderness resources." Congress had a clear intent to preserve the R.S. 2477 right-of-way.

92.    In addition, the CDPA contained a provision ensuring access to private lands surrounded by public lands. This provision states that:

> The Secretary [of the Interior] *shall* provide adequate access to nonfederally owned land or interests in land within the boundaries of the conservation units and wilderness areas designated by this Act which will provide the owner of such land or interest the reasonable use and enjoyment thereof . . .

See CDPA, Pub. L. 103-433, § 708, Oct. 31, 1994, 108 STAT. 4471.

93.    Therefore, the BLM and NPS have no jurisdiction to control access over Surprise Canyon Road.

94.    Should this Court determine that the BLM and NPS do have jurisdiction over Surprise Canyon Road, we ask it to determine that the CDPA provides for access to private property surrounded by federally owned and managed lands, and that this access is not subject to other federally-enacted restrictions.

### CLAIMS FOR RELIEF

#### FIRST CLAIM FOR RELIEF:
#### QUIET TITLE IN A RIGHT-OF-WAY EASEMENT ACROSS FEDERAL PUBLIC LANDS PURSUANT TO R.S. 2477

95.    All allegations set forth in paragraphs one through ninety-four are incorporated by reference as if set forth fully below.

96.    Plaintiffs bring this civil action, pursuant to the Quiet Title Act, 28 U.S.C. §§ 1346(f) and 2409a, to enforce a recognized right-of-way over a road that traverses Federal public land owned and managed by the BLM and NPS.

97.     The nature of the right, title or interest, which the Plaintiffs claim in the real property at issue was acquired pursuant to Revised Statute 2477.

98.     Revised Statute 2477 provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." The Act of July 26, 1866, ch. 262, § 8, 14 STAT. 251, 253 (1866) (formerly codified at 43 U.S.C. § 932).

99.     The Plaintiffs have met the necessary elements to establish a granted right-of-way pursuant to R.S. 2477. The Surprise Canyon Road is a "public highway" as defined by California state law, and was accepted by the public.

100.    The nature of the right, title, or interest, which the Defendants claim in the real property herein lies in the fact that the Defendants own and manage the Federal public lands which surround the road at issue herein.

101.    The BLM and NPS continue to deny the Plaintiffs any permission to use or to perform maintenance on Surprise Canyon Road. The BLM and NPS refuse to recognize the existence of a right-of-way across the road pursuant to R.S. 2477.

102.    If a recognized right-of-way exists, pursuant to R.S. 2477, the Plaintiffs would not be liable for any trespass to the United States for maintenance of the road. At the same time, the BLM and NPS may not preclude or unreasonably interfere with the reasonable exercise of the rights of those who hold valid rights-of-way within the boundaries of Federal land.

103.    Furthermore, the Plaintiffs bring this action in order to enjoy unfettered use and maintenance of the road and to provide access to private property without fear of

administrative, civil, or criminal liability for any alleged unauthorized activity or trespass.

104.   Judicial relief is necessary and appropriate, pursuant to the Quiet Title Act, in order to recognize that such a right-of-way exists, to ensure access at all times over the road at issue herein, and to perform occasional maintenance of said road without BLM or NPS approval or notification.

**SECOND CLAIM FOR RELIEF:
DECLARATORY JUDGMENT RECOGNIZING A RIGHT-OF-WAY
EASEMENT ACROSS FEDERAL PUBLIC LANDS PURSUANT TO R.S. 2477**

105.   All allegations set forth in paragraphs one through one hundred four above are incorporated by reference as if set forth fully below.

106.   Title 28 U.S.C. § 2201 authorizes this court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a); see also 28 U.S.C. § 2202.

107.   This action seeks to quiet title through declaratory relief by requiring the Defendants to provide the Plaintiffs a recognized right-of-way, as required by Revised Statute 2477, over a road that traverses Federal public land, owned and managed by the BLM and the NPS, in order to ensure access to public and private property at all times and in order to routinely maintain the road without BLM or NPS approval or notification.

108.   Revised Statute 2477 provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." The Act of July 26, 1866, ch. 262, § 8, 14 STAT. 251, 253 (1866) (formerly codified at 43 U.S.C. § 932).

109.   The Plaintiffs have met the necessary elements to establish a granted right-of-way pursuant to R.S. 2477.

110.   Judicial relief is necessary and appropriate, pursuant to the Declaratory Judgment Act, in order to recognize that such a right-of-way exists, to ensure access at all times over the road at issue herein, and to perform occasional maintenance of said road without BLM or NPS approval or notification.

**THIRD CLAIM FOR RELIEF:**
**WRIT OF MANDAMUS TO COMPEL THE DEFENDANTS TO PROVIDE**
**ACCESS TO RIGHT-OF-WAY EASEMENT ACROSS FEDERAL PUBLIC**
**LANDS PURSUANT TO R.S. 2477**

111.   The allegations set forth in paragraphs one through one hundred ten above are incorporated by reference as if set forth fully below.

112.   Title 28 U.S.C. § 1361 authorizes this court to compel an officer of the United States to perform a duty owed to the Plaintiffs. Section 1361 specifically states:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff.

28 U.S.C. § 1361.

113.   Plaintiffs have a "clear right to the relief sought" to compel the BLM and the NPS to provide them a right-of-way easement across Federal public lands pursuant to R.S. 2477. See Smith v. Plati, 258 F.3d 1167, 1178-79 (10th Cir. 2001). Pursuant to R.S.

2477, the claim is "clear and indisputable" and the Defendants' duty is "plainly defined, peremptory and owed" to the Plaintiffs. See Workman v. Jordan, 958 F.2d 332, 334 (10th Cir. 1992), and Public Citizen v. Kantor, 864 F.Supp. 208, 212 (D.D.C. 1994).

114.    Revised Statute 2477 specifically provided that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." The Act of July 26, 1866, ch. 262, § 8, 14 STAT. 251, 253 (1866) (formerly codified at 43 U.S.C. § 932).

115.    The Plaintiffs have met the necessary elements to establish a granted right-of-way pursuant to R.S. 2477.

116.    A writ of mandamus is necessary and appropriate in order to compel the BLM and the NPS to provide the Plaintiffs access to a right-of-way across the Federal public lands.  The right-of-way at issue is currently blocked by a gate, which should be removed to provide the Plaintiffs with unfettered access to the right-of-way.

117.    This writ of mandamus is necessary to ensure access at all times over the road at issue herein, and to allow the Plaintiffs to perform occasional maintenance of said road without BLM or NPS approval or notification.

118.    Pursuant to R.S. 2477, the Defendants in this action have a "plainly defined and peremptory duty" to provide the Plaintiffs a right-of-way easement over the public lands.  See Morelli v. Alexander, 920 F. Supp. 556, 558 (S.D.N.Y. 1996); see also Smith, 258 F.3d at 1178-79.  The duty of the BLM and the NPS in this action is a "positive command" and so "plainly prescribed as to be free from doubt." Public Citizen, 864 F. Supp. at 212 (citations omitted).

119.    No other adequate remedy is available from the Department of the Interior, because
         only the Federal district courts have original jurisdiction to invoke mandamus.  <u>See</u>
         28 U.S.C. § 1361.

### FOURTH CLAIM FOR RELIEF:
### INJUNCTION AND/OR WRIT OF MANDAMUS COMPELLING THE BLM'S UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED RESPONSE TO PLAINTIFFS' APPLICATION FOR A RIGHT-OF-WAY

120.    All allegations set forth in paragraphs one through one hundred nineteen above are
         incorporated by reference as if set forth fully below.

121.    Title 5 U.S.C. § 706(1) allows this Court to compel an officer of the United States to
         perform his duty.  That statute specifically states:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall -
>         (1) compel agency action unlawfully withheld or unreasonably delayed . . . .

         5 U.S.C. § 706(1).

122.    "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency
         failed to take a *discrete* agency action that it is *required to take*."  <u>Norton v. Southern
         Utah Wilderness Alliance</u>, 542 U.S. 55, 64 (2004).

123.    In or around December 2003, Plaintiff Lollich applied with the BLM and NPS for a
         right-of-way along Surprise Canyon Road to access his private property.

124.    The BLM and the NPS responded that they would process the applications under
         FLPMA, the National Park Service Organic Act, and Section 708 of the California
         Desert Protection Act.

125.    Plaintiffs Lollich has not received written grants or denials of his applications for a
        right-of-way along Surprise Canyon Road, despite numerous requests by the
        Plaintiff to the federal agencies in question.

126.    Even though the Plaintiff has a "clear right to the relief sought" - to compel the BLM
        office to process its right-of-way application - the BLM and NPS have failed to follow
        the process required by substantive law and regulations.

127.    Section 708 of the CDPA states that "The Secretary [of the Interior] *shall* provide
        adequate access to nonfederally owned land or interests in land within the
        boundaries of the conservation units and wilderness areas designated by this Act
        which will provide the owner of such land or interest the reasonable use and
        enjoyment thereof." See CDPA, Pub. L. 103-433, § 708, Oct. 31, 1994, 108 STAT.
        4471. Therefore, the grant of the application is a discrete agency action that the BLM
        and NPS are required to take.

128.    In addition, the Alaska National Interest Lands Conservation Act ("ANILCA"), 16
        U.S.C. § 3210(b), contains language identical to that in the CDPA.  ANILCA states
        that "Notwithstanding any other provision of law, and subject to such terms and
        conditions as the Secretary of the Interior may prescribe, the Secretary shall provide
        such access to nonfederally owned land surrounded by public lands managed by the
        Secretary under the Federal Land Policy and Management Act of 1976 (43 U.S.C.
        1701-82) as the Secretary deems adequate to secure to the owner the reasonable use
        and enjoyment thereof." See 16 U.S.C. § 3210(b).

129.    The right of access to private property surrounded by public lands is not subject to
        any other provision of law. See 16 U.S.C. § 3210(b).  Because of this, there is no need

for review under the National Environmental Policy Act, the Endangered Species Act, or any other environmental statute or regulation.

130. The failure to grant the Plaintiff's right-of-way applications is illegal. Plaintiff Lollich owns private property at Panamint City, an area which is surrounded by federally owned and managed lands. The BLM and NPS are required by law to grant the Plaintiff a right-of-way to his private property inholding under these circumstances.

131. The Plaintiff has a right to an injunction and/or mandamus to "compel agency action unlawfully withheld or unreasonably delayed." See 5 U.S.C. § 706(1).

132. The injunctive remedy to compel agency action under the APA, 5 U.S.C. § 706(1), is based upon a federal question with jurisdictional authority under 28 U.S.C. § 1331. See Carpet, Linoleum and Resilient Tile Layers, Local Union No. 419, Brotherhood of Painters and Allied Trades, AFL-CIO v. Brown, 656 F.2d 564, 556-567 (10th Cir. 1981).

## REQUEST FOR RELIEF

WHEREFORE, on the foregoing basis, the Plaintiffs respectfully request that the Court grant the following relief:

133. A declaratory judgment that the Plaintiffs are entitled to a recognized right-of-way easement over Federal public lands pursuant to R.S. 2477;

134. A declaratory judgment quieting title in the Plaintiffs for a right-of-way easement over the Federal public lands at issue herein, pursuant to R.S. 2477;

135.   A declaratory judgment that the Plaintiffs are entitled to access, at all times, over the road at issue herein, and to allow the Plaintiffs to perform occasional maintenance of said road without BLM or NPS approval or notification;

136.   A declaratory judgment that the Plaintiffs are not liable for any trespass to the United States for the maintenance or use of the road, and that the BLM or NPS may not preclude or unreasonably interfere with the reasonable exercise of the rights of those who hold valid rights-of-way within the boundaries of Federal land;

137.   A declaratory judgment that the Plaintiffs are not required to make annual rental payments for use and occupancy of the right-of-way easement at issue herein;

138.   A court order in the nature of a writ of mandamus compelling the authorized officer or officers of the BLM and NPS to provide the Plaintiffs a recognized right-of-way easement over the Federal public lands at issue herein, pursuant to R.S. 2477;

139.   In the alternative, a declaratory judgment and injunction/writ of mandamus compelling the unlawfully withheld or unreasonably delayed BLM grant of the Plaintiff's right-of-way applications to provide the Plaintiff a recognized right-of-way over the Federal public lands at issue herein;

140.   An award to Plaintiffs of their reasonable costs, litigation expenses, and attorney's fees associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and all other applicable authorities; and

141.   A grant of such further and other relief as the Court deems just and proper.

//

//

//

RESPECTFULLY SUBMITTED this 31st day of August, 2006.

                                        /S/ Karen Budd-Falen
                                        Karen Budd-Falen
                                        BUDD-FALEN LAW OFFICES, LLC
                                        300 E. 18th Street
                                        Post Office Box 346
                                        Cheyenne, Wyoming 82003-0346
                                        (307) 632-5105 Telephone
                                        (307) 637-3891 Facsimile