FRIENDS OF THE PANAMINT VALLEY, *et al.*,
Plaintiffs,
v.
Dirk Kempthorne, *et al.*,
Defendants,
and
National Parks Conservation Association, *et al.*
Proposed Defendant-Intervenors

Civ. No. 1:06CV1560 (JBD)

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Friends of the Panamint Valley *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civ. No. 1:06cv1560 (JDB) |
| ) | |
| v. ) | |
| ) | |
| Dirk Kempthorne *et al*., ) | |
| ) | |
| Defendants, and. ) | |
| ) | |
| National Parks Conservation Association *et al.*, ) | |
| ) | |
| Proposed Defendant-Intervenors ) | |
| ) | |

## DECLARATION OF HOWARD P. GROSS

Town of Joshua Tree  )
                     )
State of California  )

I, Howard P. Gross, declare as follows,

     1.    I am a member of National Parks Conservation Association ("NPCA"), and have served in a staff position in the California desert since 2003, with my current title being California Desert Senior Program Manager. NPCA is a national, non-profit conservation organization with members in nearly every state, including the State of California. I make this Declaration on the basis of personal knowledge, and I am competent to testify to the matter stated herein. This Declaration is submitted in support of the NPCA *et al.*'s Motion to Intervene in the above captioned matter.

1

2. Through my position as California Desert Senior Program Manager I am familiar with both the historical and current activities of NPCA.

3. NPCA was founded in 1919 and is devoted to protect and enhance America's National Park System for present and future generations.

4. NPCA has long worked for the enactment of legislation and policies that provide for the sound management of our nation's public lands managed by the National Park Service (NPS). Our efforts have been particularly focused on protecting the ecological, historical, cultural, recreational, spiritual, and other benefits that NPS lands provide.

5. NPCA typically pursues protection and enhancement of National Parks through both legislative and administrative means, including national park or national monument area designation, and administrative processes, such as land use plans and management decisions that create special management areas. NPCA staff participate in information gathering and dissemination, education and public outreach, commenting upon proposed government actions, and other activities relating to the management of NPS lands.

6. NPCA and its approximately 325,000 members nationwide, including approximately 50,000 members in the State of California, have a keen and long-standing interest in the preservation of the unique resources of Death Valley National Park, including Surprise Canyon.

7. In the early 1990s, NPCA helped to inform the public and educate Congressional leaders about the importance of protecting lands within the California Desert to preserve the natural and cultural resources there that comprise an important part of our national heritage. During that time, NPCA actively and publicly supported the passage of the California Desert

Protection Act, which became law in 1994. That act resulted in a significant stretch of Surprise Canyon, including much of the lands at issue in this case, being included in Death Valley National Park.

8. I am aware that the BLM closed to motor vehicle use the stretch of Surprise Canyon from Chris Wicht Camp to the boundary of Death Valley National Park in 2001.

9. Over the last three years, NPCA has undertaken a number of initiatives aimed at protecting the unique and significant values of Surprise Canyon from the damage that would result from a resumption of motor vehicle travel up the Canyon. NPCA has educated its members and the public through its website, www.npca.org, and specifically about threats to Death Valley National Park, including Surprise Canyon, at http://www.npca.org/pacific/desert/threats/deathvalley.html. In November 2005, NPCA helped organize a tour for media and public officials to demonstrate the unique values of the Canyon and our concern with keeping the area closed due to the remarkable recovery of the area in response to the removal of motorized vehicles. The Winter 2006 edition of National Parks magazine – mailed to each of our 325,000 members and others – contained an article alerting the public to the potential that the Canyon could be opened, and encouraged our members to support the continued closure of the route.

10. I personally have had discussions with BLM and the NPS about the importance NPCA attaches to keeping vehicles out of the Canyon. On a November 2005 tour of the Canyon, I told BLM staff of NPCA's interest in seeing the Canyon protected from damaging motor vehicle use. In addition, I have discussed the issue with Death Valley National Park

3

Superintendent J.T. Reynolds, as well as the Death Valley's chief of resources on several occasions going back to 2003.

11. I use and enjoy the natural resources on BLM and NPS lands for many health, recreational, scientific, spiritual, educational, aesthetic, and other purposes and have used and enjoyed for these same purposes, the lands within Surprise Canyon at issue in this case. I have enjoyed hiking with my friends and colleagues, birdwatching, photography, and particularly enjoyed the Canyon's scenery and gushing waterfalls. I greatly appreciated the opportunity to be around flowing water in the desert, which is very rare and spiritually important to me. I visited the Canyon in November 2005 and intend to return before the end of the year.

12. I seek out areas where off-road vehicle travel is barred – like Surprise Canyon – because such restrictions enhance and protect many of the values (*e.g.*, peace and quiet, undisturbed wildlife and natural vegetation) that I and other NPCA members seek to experience while visiting public lands. In my personal experience, where motor vehicle travel is permitted in riparian desert streams, such use can make it impossible to enjoy natural sounds, can cause vegetation and wildlife destruction and disturbance, and may result in the pollution of otherwise pure streams.

13. NPCA members and I have benefited from the controls placed on off-road vehicles by the NPS and BLM for Surprise Canyon. Since the route was closed to motorized use in 2001, the stream and riparian habitat around it have returned to a more normal ecological condition (*i.e.*, improved riparian and upland habitat) and there are greater opportunities for natural quiet and solitude, which furthers NPCA's mission of ensuring that future generations will enjoy the clean air and water, wildlife, beauty and opportunities for recreation and renewal

that pristine deserts provide. My health, recreational, scientific, spiritual, educational, aesthetic, informational, and other interests will be directly affected and harmed by a decision that opens the area to vehicle travel, or that declares the Canyon to be a public highway, which, according to the Plaintiffs in this case, will result in opening the area to such travel. In either event, the peace and quiet, wildlife, and plant life that I enjoy in Surprise Canyon may be greatly damaged.

Pursuant to 28 U.S.C. Sec. 1746, I DECLARE, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 10/31, 2006 in Joshua Tree, California.

*Howard P. Gross*
Howard P. Gross

5