FRIENDS OF THE PANAMINT VALLEY, *et al.*,
Plaintiffs,
v.
Dirk Kempthorne, *et al.*,
Defendants,
and
National Parks Conservation Association, *et al.*
Proposed Defendant-Intervenors

Civ. No. 1:06CV1560 (JBD)

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Friends of the Panamint Valley, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | **Civ. No. 1:06cv1560 (JDB)** |
| | ) | |
| v. | ) | |
| | ) | |
| Dirk Kempthornen *et al.*, | ) | |
| | ) | |
| Defendants, and. | ) | |
| | ) | |
| National Parks Conservation Association, *et al.*, | ) | |
| | ) | |
| Proposed Defendant-Intervenors | ) | |
| _____ | ) | |

**DECLARATION OF GEARY W. HUND**

City of Idyllwild    )
                     )
State of California  )

I, Geary W. Hund, declare as follows,

    1.    I am a member of The Wilderness Society ("TWS" or "the Society"), and have served in a staff position as its California Desert and Monuments Program Director since 2005. The Wilderness Society is a national, non-profit conservation organization with members in nearly every state, including the State of California. I make this affidavit on the basis of personal knowledge, and I am competent to testify to the matter stated herein. This Declaration is submitted in support of the National Parks Conservation Association *et al.*'s Motion to Intervene in the above captioned matter.

    2.    Through my position as California Desert and Monuments Program Director, I am familiar with both the historical and current activities of The Wilderness Society.

1

3. The Wilderness Society was formed in 1935 and is devoted to preserving wilderness, forests, parks, rivers, deserts, and shorelands, and committed to fostering an American land ethic. Its mission is to protect America's wilderness and wildlife and to develop a nationwide network of wild lands through public education, scientific analysis and advocacy. Our goal is to ensure that future generations will enjoy the clean air and water, wildlife, beauty and opportunities for recreation and renewal that pristine forests, rivers, deserts, and mountains provide.

4. The Society has long worked for the enactment of legislation and policies that provide for the sound management of our nation's public lands managed by the federal government, including the Bureau of Land Management (BLM) and the National Park Service (NPS). Our efforts have been particularly focused on protecting wilderness quality lands managed by the federal government including BLM and NPS lands and the ecological, historical, cultural, recreational, spiritual, and other benefits they provide.

5. The Society typically pursues protection of these resources through both legislative and administrative means, including national park, national conservation area and monument designations, wilderness legislation, and administrative processes, such as land use plans and management decisions that create special management areas. TWS staff participate in information gathering and dissemination, education and public outreach, commenting upon proposed government actions, and other activities relating to the management of BLM and NPS lands.

6. The Wilderness Society and its over 205,000 members nationwide, including approximately 30,000 members in the State of California, have a keen interest in the preservation of the unique resources of Surprise Canyon and Death Valley National Park.

7. The Wilderness Society has a long-standing interest in the management and protection of BLM and NPS lands in California, including those lands now within Death Valley National Park. Wilderness Society staff were instrumental in the passage of the California Desert Protection Act (CDPA) of 1994 which created Death Valley National Park and included the upper portion of Surprise Canyon. The CDPA also established the Surprise Canyon Wilderness which encompassed both BLM and Park Service Lands in the Surprise Canyon.

8. I am aware that the BLM closed to motor vehicle use the stretch of Surprise Canyon from Chris Wicht Camp to the Park boundary in 2001.

9. Over the last two years, TWS has undertaken a number of initiatives aimed at protecting the unique and significant values of Surprise Canyon from the damage that would result from a resumption of motor vehicle travel up the Canyon. For example, in November 2005, TWS helped organize a tour for media and public officials to demonstrate the unique values of the Canyon and our concern with keeping the area closed due to the remarkable recovery of the area in response to the removal of motorized vehicles.

10. I personally have had discussions with BLM and the NPS about the importance TWS attaches to keeping vehicles out of the Canyon. On several visits to the Canyon, I told BLM staff of TWS's interest in seeing the Canyon protected from damaging motor vehicle use. I have also informed BLM staff at the California State Office, the California Desert District Office, and Ridgecrest Field Office of TWS's concerns about the destructive impact of reopening

3

the Canyon to motor vehicle use. Further, I have spoken with staff of the Lahontan Regional Water Quality Control Board, a State entity, about BLM's ongoing planning process for the Canyon, and TWS's concerns about the harmful impacts of reopening the Canyon to motor vehicle use, and encouraged the Board, as a cooperating agency in that planning process, to recommend that the area not be reopened.

11. I use and enjoy the natural resources on BLM and NPS lands for many health, recreational, scientific, spiritual, educational, aesthetic, and other purposes and have used and enjoyed for these same purposes, the lands within Surprise Canyon at issue in this case. I have enjoyed hiking with my friends and colleagues, bird watching, photography, botanizing and wildlife observation. As one who grew up in California and has traveled extensively in the State, I believe Surprise Canyon is one of the State's most scenic places. It features dramatic geology, and a stark contrast between the arid mountain range and the perennial high volume spring fed stream teeming with plant and animal life. It is a totally unexpected and refreshing oasis. As a trained Ecologist and Wildlife Biologist, I find the ecological values of Surprise Canyon to be exceptional. There are rare, endangered and endemic species (e.g., an aquatic springsnail and the Panamint Alligator Lizard, a relict species isolated since the Pleistocene), neotropical migratory and breeding birds and large mammals such as the desert big horn sheep which depend on its stream, riparian woodland and upland habitats. Their presence adds to the unique and important character of the Canyon. I have visited the Canyon three times, once in 1982 and twice last year. I intend to return before the summer of next year to do volunteer work to assist in the Canyon's restoration.

12. I seek out areas where off-road vehicle travel is barred – like Surprise Canyon – because such restrictions enhance and protect many of the values (*e.g.*, peace and quiet, undisturbed wildlife and natural vegetation) that I and other TWS members seek to experience while visiting public lands. In my personal experience, where motor vehicle travel is permitted in riparian desert streams, such use can make it impossible to enjoy natural sounds, can cause vegetation and wildlife destruction and disturbance, and may result in the pollution of otherwise pure streams.

13. TWS members and I have benefited from the controls placed on off-road vehicles by the NPS and BLM for Surprise Canyon. Since the route was closed to motorized use in 2001, the stream and riparian habitat around it have returned to a more normal ecological condition (*i.e.*, improved aquatic, riparian and upland habitat) and there are greater opportunities for natural quiet and solitude not only in the Canyon but in the adjacent wilderness, which furthers TWS's mission of ensuring that future generations will enjoy the clean air and water, wildlife, beauty and opportunities for recreation and renewal that pristine deserts provide. My health, recreational, scientific, spiritual, educational, aesthetic, informational, and other interests will be directly affected and harmed by a decision that opens the area to vehicle travel, or that declares the Canyon to be a public highway, which, according to the Plaintiffs in this case, will result in opening the area to such travel. In either event, the peace and quiet, wildlife, and plant life that I enjoy in Surprise Canyon may be greatly damaged. In addition, the impacts of permitting the route to be made a public highway and opening the area to vehicle use will damage not only the Canyon itself, but the adjacent wilderness through the intrusion of noise as well as the

degradation of the aquatic and riparian habitat which is used by wildlife that also inhabits the adjacent wilderness.

Pursuant to 28 U.S.C. Sec. 1746, I DECLARE, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed this *Nov. 1*, 2006 in Idyllwild, California.

*[signature]*

Geary W. Hund

6