FRIENDS OF THE PANAMINT VALLEY, *et al.*,
Plaintiffs,
v.
Dirk Kempthorne, *et al.*,
Defendants,
and
National Parks Conservation Association, *et al.*
Proposed Defendant-Intervenors

Civ. No. 1:06CV1560 (JBD)

# EXHIBIT 9



# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Ridgecrest Field Office
300 S. Richmond Road
Ridgecrest, CA 93555
www.ca.blm.gov/ridgecrest

**Decision Record
For
Private Property Access Request
To the
Independence Millsite
Inyo County, California**

## Background

The Independence Millsite is approximately one to two acres in size and was patented under the provisions of the General Mining Law in 1880 by the General Land Office. This land has been an inholding in Death Valley National Park since 1994. In 2003, twenty-eight individuals purchased this property, each owning an equal $1/28^{th}$ interest. The individuals purchasing the property are members of the Bakersfield Trailblazers, a member club of the California 4-Wheel Drive Association.

Surprise Canyon was closed to the use of off-road (motorized) vehicles on May 29, 2001 by BLM for the protection of sensitive public land resources within an Area of Critical Environmental Concern. The upper portion of Surprise Canyon was closed to motorized vehicle use in April 2002 by an order of the Superintendent of Death Valley National Park to protect the park and its associated resources from impairment resulting from damage caused by motorized vehicle use, and impacts to significant prehistoric and historic cultural resources that would likely result from public access into the area facilitated by the use of motorized vehicles.

From June through September of 2003, 16 of the 28 owners of the Independence Millsite submitted letters to the BLM in which they requested, or demanded in some cases, a key to the locked gate blocking motorized vehicle access in Surprise Canyon. Each stated that the purpose of obtaining a key to the locked gate, and an "agreement" from BLM, was to drive four-wheel drive vehicles through Surprise Canyon to access their private property. To reach their property, landowners have proposed driving motorized vehicles across public land managed by the Bureau of Land Management (BLM) and Death Valley National Park managed by the National Park Service. The BLM manages the lower half of the canyon whereas the upper half is managed by the NPS.

## Decision

Based on my review of the Supplement to the Environmental Assessment for the Proposed Interim Closure of Surprise Canyon Route P-71 (Environmental Assessment Number CA-065-2001), I have determined that the interim vehicle closure of Surprise Canyon applies to all members of the public,

including individuals owning property in the Panamint City area, <u>who do not have written authorization from the BLM and NPS to enter the area with a motorized vehicle</u>.

Furthermore, the BLM decision is to not provide landowners a key to the locked gate across Surprise Canyon based on their written requests in the form of letters. Because of the environmental damage to resources within Surprise Canyon that would result from the proposed landowner access to the Independence Millsite, I have determined they must submit an application for a permit or right of way across federal land to access their property. Upon receipt of an application, the BLM would process the application according to federal laws and regulations governing federal land use and management. Close coordination with the National Park Service would be necessary since the subject private property is an inholding within Death Valley National Park.

Landowners may access their property by hiking across federal land, or by helicopter and landing on their property. Non-motorized vehicle access across public land would fall under the casual use provisions of the regulations governing use of the public lands and would not require authorization.

### Rationale

BLM and NPS analysis of landowner access proposals indicate that activities associated with motorized vehicle access would result in appreciable disturbance or damage to public lands managed by the BLM, and would result in adverse impact to Death Valley National Park lands and their associated resources. The term appreciable means capable of being perceived or measured. The environmental impact analysis contained in the supplemental environmental assessment clearly indicates the effects of landowner access activities involving motorized vehicles would be both perceptible and measurable. Under the requirements of 43 CFR 2800, activities proposed on public land that would result in any appreciable disturbance or damage to public lands and resources require that the proponent of the activity submit an application for a permit or right of way. The application would be processed by the BLM and a formal decision would be made. A similar process would be required by the NPS.

The Consent Decree and Court Orders pertinent to this situation, issued by District Court Judge William Alsup, applies only to the BLM. It does not exempt BLM from compliance with applicable laws and regulations in carrying out the provisions of the Court Order. In the case of Surprise Canyon, the Consent Decree and Court Orders indicate that owners of private land in the vicinity of Panamint City <u>may</u> receive a key to a locked gate, and an agreement from the BLM in order to access their property. The Court Order does not exempt BLM from following legal and regulatory procedures in addressing the landowner access requests. At this time there is no basis for BLM issuing keys and establishing such an agreement because decisions regarding landowner access have not been made. The NPS was not a party in the lawsuit or Consent Decree and, therefore, is not affected.

The current decision is to deny landowners a key, and to offer them an opportunity to apply for a permit or right of way to access to their property. Separate applications would be required by the BLM and the NPS. If landowners elect to submit such applications, the outcome would an analysis of the impacts of their proposal and alternatives under provisions of the National Environmental Policy Act, a decision by BLM and NPS regarding type and location of access across federal land, and any required terms and conditions governing such access. After a decision is reached, the landowners may seek an access agreement that is consistent with the outcome of the decision as a means to clarify roles and responsibilities of the government and individual landowners.

The changes that have occurred in Surprise Canyon since the BLM the public land portion of the canyon to off-road vehicle use are significant and are the primary basis for denying the key request by landowners. The absence of any road or trail on most of the public land portion of the canyon is one of several significant factors. Surprise Canyon is in a Limited Multiple Use Classification under the California Desert Conservation Area Plan. Motorized vehicle travel on lands in this classification is limited to designated or existing routes of travel. Although the Surprise Canyon road was designated as an open route in 1985-1987, flash flooding has eliminated much of the route and left the canyon in a natural condition with a meandering perennial stream and riparian vegetation. The BLM is legally mandated to protect or improve the outstandingly remarkable values of Surprise Canyon creek, which was determined eligible for designation under the provisions of the Wild and Scenic Rivers Act in a land use planning decision in December 2002. These values would be appreciably disturbed and damaged from vehicle use associated with landowner access. Furthermore, BLM has a legal responsibility to protect the resources and values of the Surprise Canyon Area of Critical Environmental Concern from irreparable damage to important historic, cultural, or scenic values, fish and wildlife resources or other natural systems or processes (Federal Land Policy and Management Act, Section 103(a).

## Conclusion

Landowners of the Independence Millsite have submitted a request or demand for a key to the locked gate across Surprise Canyon for the purpose of driving off-road vehicles across federal in Surprise Canyon to access their recently acquired property. Their request, if granted, would result in appreciable disturbance or damage to federal lands and resources, and therefore cannot be considered a casual use activity. Thus, in order to further consider landowner requests to access their property by driving off-road vehicles through Surprise Canyon, they must apply for a permit or right of way under the provisions of 43 CFR 2800/2929 and 36 CFR 14. If an application is received, BLM will process it according to procedures in the regulations.

Landowners may exercise their access rights to their property as casual users of the federal lands through hiking, through the use of pack animals, or by helicopter landing on their parcel of property.

_____  Oct. 24, 2003
Hector Villalobos         Date
Field Manager