## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FRIENDS OF THE PANAMINT VALLEY; LITTLE CHIEF MILLSITE PARTNERSHIP; and BRIAN LOLLICH | ) ) ) ) | Case No. 1:06cv1560 (JDB) |
| Plaintiffs, | ) ) ) | **FEDERAL DEFENDANTS' MOTION TO TRANSFER THE CASE OR, IN THE** |
| v. | ) ) | **ALTERNATIVE, TO DISMISS PLAINTIFFS' FIRST AND** |
| DIRK KEMPTHORNE, in his official capacity as Secretary of the Department of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; KATHLEEN CLARKE, in her official capacity as Director of the Bureau of Land Management; MIKE POOL, in his official capacity as Director of the California State Bureau of Land Management; HECTOR VILLALOBOS, in his official capacity as Field Manager of the Bureau of Land Management Ridgecrest Field Office; BUREAU OF LAND MANAGEMENT; FRAN P. MAINELLA, in her official capacity as Director of the National Park Service; JAMES T. REYNOLDS, in his official capacity as Superintendent of the Death Valley National Park; and NATIONAL PARK SERVICE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **THIRD CLAIMS FOR RELIEF** |
| Defendants. | ) ) ) | |

**INTRODUCTION**

On August 5, 2006, Friends of the Panamint Valley, Little Chief Millsite Partnership, and Bryan Lollich (Collectively "Plaintiffs"), filed suit in this Court in an attempt to gain access to the Surprise Canyon Road with the use of recreational off-road vehicles.  Specifically, Plaintiffs allege that they are entitled to use the Surprise Canyon Road despite its location on Federal and public lands because they, as members of the public, are the beneficiaries of an alleged right-of-way pursuant to Revised Statute 2477 ("R.S. 2477"); 43 U.S.C. § 932 (1970, repealed 1976). Plaintiffs seek to quiet title to the alleged right-of-way under the Quiet Title Act, 28 U.S.C. § 2409a.  Complaint ¶¶ 95-104 (First Claim for Relief).  Plaintiffs also seek a declaratory judgment from this Court "recognizing" the existence of the right-of-way over the Surprise Canyon Road, id. ¶¶ 105-110 (Second Claim for Relief), and a writ of mandamus compelling the defendant agencies to provide Plaintiffs the access they seek and to allow Plaintiffs to perform maintenance of the Road without agency approval or even notification, id. ¶¶ 111-119 (Third Claim for Relief).  Finally, Plaintiffs allege that the U.S. Bureau of Land Management ("BLM") and the U.S. National Park Service ("NPS") have unlawfully delayed in processing plaintiff Bryan Lollich's application for an administrative right-of-way over Surprise Canyon Road in violation of the California Desert Protection Act ("CDPA"), Pub. L. 103-433, §708, Oct. 31, 1994, 108 Stat. 4471, and the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3210(b).  See Complaint ¶¶ 120-132 (Fourth Claim for Relief).

Pursuant to 28 U.S.C. §§ 1402(d), 1406(a), and Rule 12(b)(3) of the Federal Rules of Civil Procedure, Federal Defendants[1] hereby move to transfer the Complaint, or in the

---

[1]      The term "Federal Defendants" refers to Dirk Kempthorne, in his official capacity as Secretary of the Department of the Interior, the United States Department of the Interior, Kathleen Clarke, in her official capacity as Director of the BLM, Mike Pool, in his official capacity as Director of the California State BLM, Hector Villalobos, in his official capacity as Field Manager of the BLM Ridgecrest Field Office, the BLM, Fran P. Mainella, in her official

alternative, to dismiss Plaintiffs' First and Third Claims for Relief because venue is not proper in

this District.  Venue for a Quiet Title action against the United States lies only in a judicial

district in which the disputed property is located.  Accordingly, Plaintiffs' First Claim for relief,

which seeks to quiet title to an alleged right of way over the Surprise Canyon road pursuant to

R.S. 2477, must be brought in the Eastern District of California in the first instance.  Plaintiffs'

Third Claim for Relief, which seeks a writ of mandamus compelling the Defendants to provide

Plaintiffs access to the alleged right-of-way, must also be transferred or dismissed because it

assumes a favorable resolution of the quiet title claim, even though that issue has yet to be

decided by the transferee court.[2]  Finally, in the event the Court transfers Plaintiffs' First and

Third Claims for Relief, Defendants respectfully submit that it should also transfer the remaining

two claims so as to promote judicial economy and prevent the instant suit from being litigated

piecemeal in different fora.  Pursuant to Local Rule 7(m), the undersigned counsel has conferred

with counsel for the Plaintiffs concerning this motion and counsel for the Plaintiffs has indicated

that she will oppose the motion.

---

capacity as Director of the NPS, James T. Reynolds, in his official capacity as Superintendent of
the Death Valley National Park, and the NPS.

[2]      Additional reasons for dismissal of the Plaintiffs' claims exist, but they are more
appropriately addressed by the transferee court.  For example, the Plaintiffs' First Claim for
Relief must be dismissed because Plaintiffs cannot claim an interest in title to a highway within
the meaning of R.S. 2477, and therefore do not meet the conditions for the limited waiver of
sovereign immunity set out in the Quiet Title Act, 28 U.S.C. §2409a.  Plaintiffs' Second Claim
for Relief must also be dismissed because the Quiet Title Act is the exclusive means by which a
plaintiff may challenge the United States' title to real property, and because the Declaratory
Judgment Act, unlike the Quiet Title Act, does not provide a private right of action or a waiver
of sovereign immunity.  If the instant motion to transfer is granted, it is contemplated that the
United States will file a motion to dismiss in the transferee court on these grounds.

**BACKGROUND**

I.    **Factual and Procedural Background**

On September 5, 2006, Plaintiffs filed a Complaint in the District for the District of

Columbia seeking to quiet title to an alleged right-of-way over the Surprise Canyon Road.  See

Complaint ¶¶ 1, 38.  The Surprise Canyon Road commences at a point along the Indian Ranch

Road and runs in a northeasterly direction towards an abandoned mining town called Panamint

City.  Id. ¶38.  The Road is approximately six miles long and is contained almost exclusively

within Federal and public lands, including the Death Valley National Park.  Id. ¶39.

The Road was originally established in the 1870's to provide access to Panamint City and

its mines, which at the time were the site of a short-lived silver boom.  Id. ¶40.  Since closure of

the mines in 1877, the Road has primarily been used for recreational purposes and to access

Panamint City, which is now a tourist attraction.  Id. ¶¶ 41-43.  However, a flash flood in 1984

washed out large portions of the Road, rendering it accessible only by specialized off-road

vehicles.  Id. ¶44.

On or about March 16, 2000, a number of environmental groups sued BLM alleging that

it had violated the Endangered Species Act ("ESA") by failing to enter into consultation with the

U.S. Fish and Wildlife Service ("FWS") concerning its issuance of a general planning document

for public lands including the land at issue in this case.  Id. ¶54.  In settlement of that case, BLM

entered into a court-approved stipulation by which it agreed, inter alia, to prohibit motorized

access to the Surprise Canyon Road pending its completion of an environmental analysis

pursuant to the National Environmental Policy Act.  Id. ¶¶ 55-56.  Accordingly, BLM installed a

gate prohibiting access to the Surprise Canyon Road shortly after May 29, 2001.  Id. ¶61.  The

stipulation, however, provided an exception for individuals owning private property within the

vicinity of Panamint City, such that they could continue to use the Surprise Canyon Road to access their property.  Id. ¶56, 59.

In response to BLM's interim decision to close the Surprise Canyon Road to motorized vehicle use, individual members of the plaintiff groups in the instant case, including Bryan Lollich, purchased property near Panamint City consisting of old mining claims.  Id. ¶¶ 51-53.  Mr. Lollich then sought a key to the gate and applied for authorization from the BLM to use the road to access the newly purchased property.  Id. ¶¶ 62-66.  Plaintiffs now bring the instant lawsuit by which they seek to quiet title to an alleged right-of-way over the Surprise Canyon Road.  Complaint ¶¶ 95-104 (First Claim for Relief).  Plaintiffs also seek a declaratory judgment and a writ of mandamus compelling Federal Defendants to provide Plaintiffs unfettered access to the Road, see Complaint ¶¶ 71, 105-119 (Second and Third Claims for Relief), as well as an injunction compelling a response to Mr. Lollich's application for an administrative right-of-way over the Road, see Complaint ¶¶ 120-132 (Fourth Claim for Relief).

## II.    Statutory Background

### A.    The Quiet Title Act

The Quiet Title Act provides that "[t]he United States may be named as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest."  28 U.S.C. § 2409a(a).  The Act, therefore, operates as a limited waiver of the United States' sovereign immunity, and is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property."  Block v. North Dakota, 461 U.S. 273, 286-87 (1983).  The Quiet Title Act also directs that "the district courts shall have exclusive jurisdiction of civil actions under section 2409a," see 28 U.S.C. § 1346(f), and that "[a]ny civil action under section 2409a to quiet title to an estate or interest in real property. . . shall be brought in the district court of the district where the property is located . . . .", see 28 U.S.C. §

1402(d).  Where Quiet Title Act jurisdiction lies, the court can adjudicate the disputes between

the plaintiff and the United States and render judgment between them.

### B.    R.S. 2477

In 1866, in the midst of an era of federal land grant statutes aimed at facilitating the

settlement of the American West, Congress passed R.S. 2477 as a means of providing public

access across unreserved public domain lands.  See generally, Cong. Research Service, Report

for Congress, Highway Rights of Way: The Controversy Over Claims Under R.S. 2477, at 10-18

(1993); see also Central Pac. Ry. Co. v. Alameda County, 284 U.S. 463, 472-73 (1932).  From

its 1866 enactment until its repeal in the Federal Land Policy Management Act ("FLPMA") in

1976, the statute provided, in its entirety, that "[t]he right of way for the construction of

highways over public lands, not reserved for public uses, is hereby granted."  R.S. 2477; 43

U.S.C. § 932 (1970, repealed 1976).  On October 21, 1976, Congress enacted FLPMA, which

repealed R.S. 2477 but preserved "any valid" right-of-way "existing on the date of approval of

this Act."  Pub. L. No. 94-579, §§ 701(a), 706(a), 90 Stat. 2743, 2793 (1976).

### ARGUMENT

### I.    Standards of Review

Rule 12(b)(3) of the Federal Rules of Civil Procedure "permits a defendant at the outset

of litigation to test whether [a] plaintiff has brought the case in a venue that the law deems

appropriate."  Modaressi v, Vedadi, 441 F. Supp.2d 51, 53 (D.D.C. 2006).  If a plaintiff's chosen

forum is an improper venue under applicable statutes, the district court is required to dismiss or

transfer the action to a district in which it could have been brought in the first instance.  See 28

U.S.C. §1406(a).  A court may also transfer an action from the plaintiff's chosen forum when

doing so would serve the convenience of the parties and witnesses as well as the interests of

justice.  See Vedadi, 441 F. Supp.2d at 53 (citing 28 U.S.C. §1404(a)).

"In considering a 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." Buesgens v. Coates, 435 F. Supp.2d 1, 3 (D.D.C. 2006). The plaintiff, however, bears the burden of establishing that venue is proper, and "must establish venue for each cause of action when a defendant objects." Vedadi, 441 F. Supp.2d at 53 (citing City of New York v. Cyco.Net, Inc., 383 F. Supp.2d 526, 543 (S.D.N.Y. 2005)).

## II.    The Quiet Title Act Claims Must be Transferred or Dismissed Because Venue is Improper in a District Where the Land is not Located

Plaintiffs' First and Third Claims for Relief must be transferred, or in the alternative dismissed, because venue is not proper in this District. When the Quiet Title Act was enacted, Congress also amended 28 U.S.C. § 1402 by adding subsection (d) to provide that venue for actions brought under 28 U.S.C. § 2409 shall be filed in the district court of the district where the property is located. Act of October 25, 1972, Pub. L. No. 92-562, 86 Stat. 1176 (codified at 28 U.S.C. §§ 1346(f), 1402(d), 2409a).

As with any other civil action, the instant suit may be brought only in a district in which venue is proper. Leroy v. Great Western United Corp., 443 U.S. 173, 184 n.18 (1979) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction.") (quoting Olberding v. Ill. Central R. Co., 346 U.S. 338, 340 (1953)). In this case it must also be stressed that Section 1402(d) is not a typical venue provision because the provision acts as a condition to the waiver of sovereign immunity contained in the Quiet Title Act. See United States v. Mottaz, 476 U.S. 834, 841 (1986) ("'When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction.'" ) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)); Lehman v. Nakshian, 453 U.S. 156, 161 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly

observed and exceptions thereto are not to be implied"). Moreover, the venue provision in

Section 1402(d) reflects a Congressional concern that the local district court is the appropriate

forum in terms of local law, familiarity with the land, and judicial economy. See Fulcher v.

United States, 632 F.2d 278, 285 (4th Cir. 1980); see also Norkol/Fibercore, Inc. v. Gubb, 279 F.

Supp.2d 993, 999 (E.D.Wis. 2003) ("Where claims are governed by a special venue statute . . .

which limits venue to specified districts, such claims may be brought only in a district specified

by statute. This is so because congressional intent to limit the available districts is clear and

cannot be circumvented.") (citations omitted).

Accordingly, this Court is without jurisdiction to hear the Plaintiffs' First Claim for

relief, because it seeks to quiet title to an alleged right-of-way over a road that is not located in

this District. The Court must either dismiss or transfer the claim to the Eastern District of

California. See Western Shoshone Nat'l Council v. United States, 357 F. Supp.2d 172, 176

(D.D.C. 2004) (transferring quiet title action to the district in which the property was located

because section 1402(a) had divested the District for the District of Columbia of jurisdiction over

the claim). In addition, this Court should transfer Plaintiffs' Third Claim for Relief, which seeks

a writ of mandamus compelling the Defendants to provide access to the alleged right-of-way,

because it assumes a favorable resolution of the quiet title claim even though that issue has yet to

be decided by the transferee court.

**III.     Transfer of Plaintiffs' Second and Fourth Claims for Relief is Also Appropriate**

Assuming the Court transfers the Plaintiffs' First and Third Claims for relief, Defendants

respectfully request that the Court also transfer the Plaintiffs' Second and Fourth Claims because

a transfer of the case in its entirety would serve the interests of justice as well as the convenience

of the parties and potential witnesses.

This Court has the authority to transfer the Plaintiffs' Second and Fourth Claims for relief

to the Eastern District of California under 28 U.S.C. §1404(a), which states that "[f]or the

convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under the statute, the Court has broad discretion to determine whether to transfer a case from one forum to another, and as the Supreme Court has instructed, it should exercise that discretion "according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964). In determining whether to transfer the instant case, the Court should examine a host of relevant factors, including the "preference given to [plaintiffs'] choice of forum; convenience of the parties, counsel and witnesses; the location of the record; and the interests of justice." Hawksbill Sea Turtle v. FEMA, 939 F. Supp. 1, 3 (D.D.C. 1996) (citing 15 Charles A. Wright et al., Federal Practice and Procedure §§ 3848-54 (2d ed. 1986). Here, transfer of the Plaintiffs' Second and Fourth Claims for Relief to the Eastern District of California is appropriate because each of those claims could have been brought in that district in the first instance, and because considerations of convenience, fairness, and judicial economy weigh strongly in favor of having the claims heard in that district.

**A.    The Second and Third Claims for Relief could have been brought in the Eastern District of California in the first instance**

Except where a specialized venue statute such as 28 U.S.C. § 1402(d) applies, the only limitation on the court's discretion to transfer an action is the statutory requirement that the new venue be a "district or division where [the case] might have been brought." 28 U.S.C. § 1404(a); see, e.g., Kafack v. Primerica Life Insurance Co., 934 F. Supp. 3, 5 (D.D.C. 1996). This issue of where the case "might have been brought" is in turn addressed by 28 U.S.C. § 1391(e), which provides in relevant part that, in an action where an agency of the United States is a defendant, venue is proper in any judicial district in which "a defendant in the action resides, [or] a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(e)(1), (2).

Under this standard, Plaintiffs could have brought their case in the Eastern District of California because the BLM and NPS offices with the responsibility for management of the Federal and public lands at issue are located in California.  These offices are the very ones that Plaintiffs claim have unlawfully withheld or unreasonably delayed a response to Mr. Lollich's application for an administrative right-of-way.  See Complaint ¶¶ 121-124.  Moreover, the defendant agencies' installation of a gate, which Plaintiffs allege has unlawfully impeded their access to the Surprise Canyon Road and which is part of the basis for all four claims for relief, also occurred within the Eastern District of California.  Id. ¶¶ 7-8, 101-102, 110, 116-117.  Therefore, the Eastern District of California is an appropriate venue for this case under 28 U.S.C. § 1391.

**B.    The interests of justice, convenience of the parties, and judicial economy favor transfer**

The interests of justice are best served by transferring all of the Plaintiffs' claims to the Eastern District of California.  See 28 U.S.C. § 1404(a).  As the Supreme Court has recognized, the existence of local interest in a matter favors having the matter litigated locally:

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.  There is a local interest in having localized controversies decided at home.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947).  In this instance, the residents of California have a "compelling interest . . . in having this localized controversy decided at home."  Trout Unlimited v. U.S. Dep't of Agriculture, 944 F. Supp. 13, 19 (D.D.C. 1996); see also Citizen Advocates for Responsible Expansion v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983) (deciding that case should be transferred from Washington, D.C. to Texas because a highway proposal is a uniquely local concern).  The Surprise Canyon Road lies entirely within the Eastern District of California, as does Death Valley National Park, Panamint City and, presumably, each of the parcels of property allegedly owned by the Plaintiffs.  See Complaint ¶¶25-27.  Thus, transfer of

this case would serve the interests of the Plaintiffs as well as any other parties who may own

property near Panamint City but who have not been joined to the instant litigation.  In addition,

the National Parks Conservation Association, Center for Biological Diversity, Sierra Club,

Public Employees for Environmental Responsibility, California Wilderness Coalition, and

Wilderness Society collectively have many thousands of members living in California, all of

whom assert an interest in the preservation of Surprise Canyon.  See Motion of National Parks

Conservation for Leave to Intervene as Defendants (Dkt. 8) at 2; Memorandum in Support of

Motion to Intervene (Dkt. 8) at 2-4.[3/]  Moreover this case has no meaningful connection to the

District of Columbia, with the minor exception that each of the defendant agencies have their

principal offices in Washington, D.C.  Given these circumstances, the interests of justice

strongly favor having this controversy in its entirety settled at its place of origin.  See Citizen

Advocates for Responsible Expansion, 561 F. Supp. at 1239 (recognizing that a defendants'

burden to demonstrate that transfer under 28 U.S.C. §1404 is proper is substantially diminished

where transfer is sought to the forum where plaintiffs reside and the connection between the

plaintiffs, the controversy and the chosen forum are attenuated).

     In addition, it would not serve the convenience of the parties or judicial economy for two

separate districts to address the claims in Plaintiffs' Complaint.  The Supreme Court and other

courts have consistently found that principles of "wise judicial administration" counsel against

allowing suits to be litigated piecemeal in different fora.  See, e.g., Kerotest Mfg. Co. v. C-O-

Two Fire Equipment Co., 342 U.S. 180, 183 (1952) (courts shall not permit duplicative

litigation, but instead give "regard to conservation of judicial resources and comprehensive

---

[3/]     The National Parks Conservation Association's motion to intervene was filed with this
Court on November 8, 2006, and oppositions to that motion are due on December 11.  Federal
Defendants, however, will file a Stipulation on behalf of all parties requesting that the Court stay
the briefing on the motion to intervene until the Court is able to issue an order on the instant
motion.

disposition of litigation"); <u>Colorado River Conservation District v. United States</u>, 424 U.S. 800, 817 (1976) (same); <u>see also</u> <u>Columbia Plaza Corp. v. Security National Bank</u>, 525 F.2d 620, 626 (D.C. Cir. 1975) ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided."); <u>Western Shoshone Nat'l Council</u>, 357 F. Supp.2d at 176 ("Severance, under such circumstances is, at a minimum, inadvisable.").

<b>CONCLUSION</b>

For the foregoing reasons, Federal Defendants respectfully request that the Court transfer the above captioned case to the Eastern District of California.  In the alternative, Defendants request that the First and Third Claims for relief be dismissed for improper venue, and that Federal Defendants be granted leave to file a second motion pursuant to F.R.Civ.P. 12(b)(1) to dismiss the Plaintiffs' Second Claim for Relief for lack of jurisdiction.

Respectfully submitted this 7th day of December, 2006,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

 /s/ Guillermo A. Montero
GUILLERMO A. MONTERO
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
(ph)(202) 305-0443/(fax)(202) 305-0274